### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN SLAUGHTER, | CASE NO. 1:13-cv-02719- GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 10, 11, 12, 13, 14 |

## MEMORANDUM

### I.    Procedural Background

On January 4, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). (Tr. 168-71). On March 31, 2011, the Bureau of Disability Determination denied this application (Tr. 59-74), and Plaintiff filed a request for a hearing on April 5, 2011.  (Tr. 87-88). On April 16, 2012, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 30-58).  On May 22, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 11-29). On July 18, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 9-10), which the Appeals denied on September 20, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-8).

On November 6, 2013, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On February 12, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 10, 11). On March 26, 2014, Plaintiff filed a brief in support of her appeal ("Pl. Brief"). (Doc. 12). On April 24, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 13). On May 2, 2014, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 14). On November 19, 2014, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 16, 17).  The matter is now ripe for review.

## II.  Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y*

*of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

### III.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV. Relevant Facts in the Record

Plaintiff was born on December 21, 1971 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 23). 20 C.F.R. § 404.1563. Plaintiff has a limited education and past relevant work as a home attendant. (Tr. 23).

### A. Function Report and Testimony

Plaintiff limits her discussion in her appeal to impairments related to her low back and lower extremity pain, and the Court will limit its discussion accordingly. (See, Pl. Brief; Pl. Reply). On February 14, 2011, Plaintiff submitted a Function Report. (Tr. 187-96). She reported problems sleeping and bathing. (Tr. 188). She reported spending only five to ten minutes cooking meals, and indicates that she eats microwaveable food most of the time. (Tr. 189). She indicated that she does "light" cleaning and "light" laundry, but needs help carrying clothes, cleaning, vacuuming, and taking trash out from her house. (Tr. 189). She admitted that she can go out alone, but reported that she needs someone to go with her if carrying things is involved. (Tr. 190). She indicated that she goes shopping once a month. (Tr. 190). She reported that her hobbies are watching television and reading, and that she spends most of her time "laying in bed." (Tr. 191). She indicated that she does not spend time with others. (Tr. 191). She reported problems lifting, squatting, bending, standing, walking, sitting, kneeling, and climbing stairs. (Tr. 192). She indicated that she had worsening pain every day since March of 2010 in her back, legs, and hips and that it lasts for hours at a time. (Tr. 195).

In a report dated January 25, 2012, she reported most of the same limitations. (Tr. 215).   She reported limitations in her social activities, no hobbies,

and difficulties with her personal needs. (Tr. 213). She indicated that she needs to take naps throughout the day due to fatigue. (Tr. 215).

On April 16, 2012, Plaintiff appeared and testified before the ALJ. (Tr. 30). She testified that her medications cause her pain and that her pain in her legs and back wakes her up at night. (Tr. 35). She explained that the medications cause drowsiness and she has to take them four times per day, which "leaves [her] unable to function to do anything, cook, clean." (Tr. 35). She indicated that her pain is constant and wakes her up at night. (Tr. 35). She testified that she could not lift her grandchildren and had a friend who does the shopping, laundry, and cooking. (Tr. 38). She testified that she spends most of her day laying down flat on her stomach. (Tr. 44). She explained that sitting for extended periods of time causes pain in the back of her legs. (Tr. 46). She reported that her lack of functioning made her feel depressed. (Tr. 47).

## B. Medical Records

On March 16, 2010, Plaintiff presented to the emergency department at Harrisburg Hospital complaining of low back pain that woke her in the middle of the night. (Tr. 229). Plaintiff was "diffusely tender to palpation throughout lumbosacral region in the paraspinous musculature," but her physical examination was otherwise normal. (Tr. 229). Plaintiff indicated that she was "otherwise well" and denied radiating pain, weakness, numbness, and tingling. (Tr. 229). Plaintiff

was discharged, prescribed Vicodin, Keflex, and naproxen and instructed to follow-up with her primary care provider in two days. (Tr. 229-30).

On March 26, 2010, Plaintiff returned to the emergency department at Harrisburg Hospital with low back pain. (Tr. 227). Plaintiff reported that her pain had not improved or worsened. (Tr. 227). She reported "some overflow incontinence over the past one day now, which is what concerned her enough to come back in." (Tr. 227). On examination, she was in moderate distress secondary to pain. (Tr. 227). Plaintiff had "tenderness with radiation" in her lumbar spine, and her physical examination was otherwise normal. (Tr. 227). An MRI indicated "posterior disc bulge with more focal left paracentral protrusion resulting in mild to moderate central canal narrowing at L4-L5" and "probable very mild mass effect on the bilateral L5 nerve roots." (Tr. 255).

On April 15, 2010, Plaintiff was evaluated by Dr. Michael Fernandez, M.D., at the Orthopedic Institute of Pennsylvania to evaluate her MRI and for low back pain and left lower extremity pain. (Tr. 234). She reported constant, sharp, burning pain in her low back that radiated to her left thigh. (Tr. 234). She indicated that her pain was worse with bending, sitting, lying down, working and walking, and was improved with sleeping. (Tr. 234). She reported weakness and severe muscle spasm that led to urinary incontinence on three to four occasions. (Tr. 234). Plaintiff had moderate tenderness to palpation and "slightly decreased" range of

motion in her lumbar spine. (Tr. 235). Plaintiff's physical examination was

otherwise normal. (Tr. 235). Dr. Fernandez noted:

> I had a long conversation with Dawn. I will give her a steroid dose
> pack. also recommended physical therapy which she will do. I told her
> to avoid her narcotics and she will do this. I also asked her regarding
> her work. She said that she does a lot of lifting at work. I
> recommended light duty no lifting anything greater than 5 lbs. for the
> next month or so. If that doesn't work then she will be off work for
> one month, but only one month and then she can return to light duty
> or advance to her regular position duties. I will do a clinical recheck in
> one month. If she does not get better would recommend epidural
> steroid injections.

(Tr. 235).

On May 13, 2010, Plaintiff followed-up with Dr. Fernandez. (Tr. 236-37).

She reported her leg pain had improved, but still complained of low back pain. (Tr.

236). She had not been to physical therapy. (Tr. 236). Her physical examination

was normal. (Tr. 236). Dr. Fernandez noted:

> I had a long conversation with Dawn. Her neurologic exam today is normal.
> Her urinary symptoms have resolved. I would recommend physical therapy_
> She had not done physical therapy. She told me that her car had broken
> down. I also would like to start her on Medrol Dosepak, Naprosyn, and
> Flexeril. She was given those medication prescriptions today. I told her that I
> do not see anything on her previous MRI that I would recommend surgery
> for and that she has worsening lower extremity symptoms, but her main
> complaint is low back pain and muscle tightness. I will see her in the future
> on an as needed basis unless she had a change in her clinical or neurologic
> picture.

(Tr. 237-38).

On February 7, 2011, Plaintiff was evaluated by Dr. Mark Knaub, M.D. at Hershey Medical Center. (Tr. 250). She reported pain in her back and legs. (Tr. 249). She reported this pain was worsened with prolonged standing, sitting, forward flexion, made only minimally better with a hot shower and change in position. (Tr. 249). Plaintiff had pain on range of motion and tenderness in her lumbar spine. (Tr. 249). Dr. Knaub noted:

> Low back pain. Patient does show some signs of degenerative changes within the disc; however, the disc space is well maintained, as well as there is remaining increased T2 signal within that disc space. I have recommended she begin treatment in Physical Therapy. She does indicate that she is in significant discomfort, despite her symptoms beginning in March. She has also been recommended to be seen and evaluated by Pain Management Service, considering her symptoms are relatively the same as they were on previous March. I have informed her that Pain Management Service may have little to offer her, despite this, she still requests to be seen by Pain Management Service for their opinion. Patient will return in timeframe of approximately 5 weeks. During this timeframe, she is to become active in physical therapy for back, abdominal strengthening activities.

(Tr. 250).

On February 24, 2011, Plaintiff was evaluated by Dr. Vitally Gordin, M.D., at Hershey Medical Center. (Tr. 260). She reported pain "8/10 intensity mainly in the low back." (Tr. 260). She reported pain with numbness and tingling that radiated to her bilateral knees. (Tr. 260). She indicated that her bladder incontinence had resolved in November of 2010. (Tr. 261). She reported that her pain was aggravated with prolonged sitting and bending backwards. (Tr. 261). Plaintiff had not started physical therapy "because of transportation difficulties."

(Tr. 261). She reported "often" waking up at night due to pain. (Tr. 261). "Throughout the consultation, [Plaintiff] was very tearful, she was crying intermittently because of pain and frustration with the fact that she continued to have low back pain after almost a year." (Tr. 261). On examination, Plaintiff had tenderness and heel walking caused pain, but her physical examination was otherwise normal. (Tr. 261). Her mood was "depressed." (Tr. 261). Plaintiff was assessed to have lumbar spondylosis, depression, and poor coping skills. (Tr. 261). Plaintiff was scheduled for an epidural injection, prescribed Neurontin, and recommended physical therapy and a consultation with a psychiatrist for her depression. (Tr. 262).

On March 2, 2011, Plaintiff was evaluated by state agency physician Dr. Bruce Goodman, M.D, who had also reviewed some of her records. (Tr. 263-68). Plaintiff reported living in a two-story home by her house. (Tr. 265). She had the "assistance of another adult however it is necessary for her to perform activities of cooking, cleaning, grocery shopping and driving." (Tr. 265). She reported receiving assistance from family members for "heavy household chores." (Tr. 265). On examination, Plaintiff had "some loss of the normal lordotic curve secondary to increased paravertebral muscle spasm," a positive straight leg raise on the left, reduced range of motion, and a "good deal of difficulty in maintaining the supine position because of discomfort in the low back area." (Tr. 265). Dr.

Goodman opined that Plaintiff could frequently lift and carry up to three pounds and occasionally lift and carry up to ten pounds. (Tr. 267). He opined that she could sit, stand, or walk for four to six hours each out of an eight-hour workday. (Tr. 267). He opined that she could occasionally bend and kneel but could never stoop, crouch, balance or climb. (Tr. 268). He indicated that no other physical functions were limited by her impairments. (Tr. 268).

On April 12, 2011, Dr. Williams completed an Employability Assessment Form for the Pennsylvania Department of Public Welfare. (Tr. 270). He opined that she was disabled through April 12, 2012 due to back pain and hypertension. (Tr. 271).

On April 20, 2011, Plaintiff followed-up with Dr. Gordin. (Tr. 276-77). Plaintiff "overall seem[ed] very stressed and emotional today. The patient states it is her ultimate goal to become more active on a daily basis and return to her normal quality of life." (Tr. 276). Plaintiff had diffuse tenderness, but her physical examination was otherwise normal. (Tr. 277). Plaintiff was scheduled for an epidural injection and "encouraged the patient to continue with her conservative medical management, as it does seem to be buying her with some interval improvement." (Tr. 277). Plaintiff's injection was eventually cancelled due to severe hypertension. (Tr. 286).

On March 8, 2012, Plaintiff followed-up with Dr. Gordin. (Tr. 286). Plaintiff "still complain[ed]  that her pain is about a 7/10 and that her pain is shooting from the middle of her back, She has throbbing pain In the middle of her back, which shoots down the back of both of her legs to her feet." (Tr. 286). She also reported muscle spasm, numbness, tingling, and weakness. (Tr. 287). Plaintiff's pain had spread from her lumbar spine to her lower thoracic spine. (Tr. 287). On examination, she was tearful, she had weakness in her right thigh, and she had a positive straight leg raise on the left. (Tr. 287). Plaintiff was again scheduled for an epidural injection. (Tr. 292). Plaintiff had the injection on March 19, 2012, with no complications. (Tr. 292-93).

## C. ALJ Findings

On May 22, 2012, the ALJ issued the decision. (Tr. 14). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2010, the alleged onset date. (Tr. 16). At step two, the ALJ found that Plaintiff's lumbar stenosis and spondylosis, depression, hypertension and diabetes mellitus were medically determinable and severe. (Tr. 16). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 17). The ALJ found that Plaintiff had the RFC to:

> [P]erform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that the claimant is able to lift and carry ten pounds occasionally and three pounds frequently. She is able to stand/walk for four hours and sit for four hours in an eight-hour workday. However, she

must be permitted to alternate between sitting and standing positions at will. The claimant is capable of occasional bending, kneeling, stooping, and stair climbing. She cannot perform any balancing, crouching, or crawling. The claimant must avoid temperature extremes, as well as hazards such as unprotected heights and moving machinery on the job site floor. Finally, due to the combined effects of the claimant's mental health conditions, preoccupation with pain, and the side effects of her medication, the claimant is limited to only occasional changes to the routine work setting, capable of only simple work-related decisions, and her attention and concentration is limited to 90% of the workday.

(Tr. 19).

A step four, the ALJ found that Plaintiff could not perform past relevant work. (Tr. 23). At step five, in accordance with the VE testimony, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 23-24). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 24).

## V.    Plaintiff Allegations of Error

### A. The ALJ's assignment of weight to the medical opinions

In assessing Plaintiff's RFC, the ALJ assigned weight to the medical opinions in the file. (Tr. 23). The record contains a treatment note from Dr. Hernandez that Plaintiff had lifting restrictions at work for one month, Dr. Goodman's opinion, and Dr. Williams' Employability Assessment Form. *Supra*. The parties have not identified any portion of the record that contains opinions on Plaintiff's functional limitations from Dr. Gordin or Dr. Knaub. *Supra.*

Specifically, the ALJ wrote:

The undersigned gives significant weight to the medical opinions of Dr. Fernandez, Dr. Gordin, Dr. Knaub, and Dr. Goodman. Minimal weight is given to the DPW form completed by Dr. Williams, as Social Security uses a different standard for disability than the Commonwealth of Pennsylvania. Similarly, minimal weight is given to the State agency opinions, which are provided by a non-physician and overstates the claimant's ability to lift and can)' up to 20 pounds. The record does not contain an assessment by a State agency psychological consultant.

(Tr.23).

Plaintiff asserts that:

In his decision, the ALJ stated that he gave significant weight to the treating source medical opinion of Dr. Fernandez, Dr. Gordin, and Dr. Knaub and that the residual functional capacity assessment is supported by a combination of their medical opinions. (Tr. 23). However, the ALJ failed to state where the medical opinions he relied on can be found in the record. *(See* Tr. 14-25). The ALJ simply summarized the medical evidence and the treatment that these different doctors provided. (Tr. 20-22). Furthermore, the ALJ gives no indication as to how he resolved any inconsistencies between the medical opinions of these doctors. Lastly, but for a statement from Dr. Fernandez made one month after Slaughter's back pain began, the ALJ cites to no statements from these treating doctor concerning Slaughter's capacity for work.

(Tr. 17). Defendant responds that each opinion indicated that Plaintiff was not

disabled within the meaning of the Act. (Def. Brief at 13).

Pursuant to Dr. Fernandez's opinion, Plaintiff was to return to work after

only one month. *Supra.* Thus, she would not meet the durational requirement to

establish disability within the meaning of the Act. Pursuant to Dr. Goodman's

opinion, Plaintiff could perform a range of light work. *Supra.* Any error in failing

to identify the weight given to the medical opinions was harmless because no

opinion assessed work-preclusive limitations. Thus, remand is not required. *See Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) (remand is not required when it would not affect the outcome of the case).

## B. Credibility Assessment

The ALJ found Plaintiff to be less than fully credible because her testimony conflicted with her function report and because she had been noncompliant with physical therapy. (Tr. 23). The ALJ also relied on Dr. Goodman's examining source opinion that Plaintiff could perform a range of light work. (Tr. 23).

Plaintiff asserts that the ALJ erred in assessing her credibility. (Pl. Brief at 9-14). Specifically, Plaintiff asserts that her function report does not conflict with her testimony and that she made consistent claims to her physicians. (Pl. Brief at 11-12). Plaintiff also asserts that the ALJ did not explicitly discuss other factors identified in the regulations. (Pl. Brief at 11-12).

When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the

adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P; *see also* 20 C.F.R. § 416.929. "Under this evaluation, a variety of factors are considered, such as: (1) 'objective medical evidence,' (2) 'daily activities,' (3) 'location, duration, frequency and intensity,' (4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain." *Daniello v. Colvin*, CIV. 12-1023-GMS-MPT, 2013 WL 2405442 (D. Del. June 3, 2013) (citing 20 C.F.R. § 404.1529(c)).

Plaintiff focuses on the overall consistency of her claims, arguing that her function report was not inconsistent with her testimony and that she made consistent claims to her physicians. However, the overall consistency of her claims is only one factor in evaluating her credibility. The ALJ also concluded that Plaintiff's noncompliance with treatment rendered her claims less credible. (Tr. 23). Plaintiff has not challenged this conclusion. This conclusion is an accurate characterization of the record, and an appropriate basis to reject Plaintiff's credibility. SSR 96-7p. Finally, the ALJ relied on Dr. Goodman's opinion, which provides objective evidence that contradicts Plaintiff's claims of debilitating symptoms. This is also an appropriate basis to reject Plaintiff's credibility. SSR 96-7p.

Plaintiff asserts that her claims regarding the side effects from her medication should have been credited. The only evidence of side effects from

Plaintiff's medication were her subjective claims, which the ALJ properly found was less credible due to her noncompliance with treatment. *Supra.* Moreover, Plaintiff has not alleged that she made any complaints of medication side effects to her providers. The ALJ accommodated for the "side effects of her medication" in limiting her to attention and concentration to only 90% of the time. (Tr. 19). No physician opined that the side effects of Plaintiff's medications caused work-related functional limitations. Thus, any error by the ALJ in failing to adequately address the side-effects of Plaintiff's medication was harmless. *See Schmidt v. Comm'r Soc. Sec.*, 465 Fed.Appx. 193, 199 (3d Cir. 2012) (Failure to discuss side-effects of medication was harmless where "(1) the record did not contain complaints by [claimant] to his physicians about the medications, (2) side effects were considered when prohibiting him from operating heavy equipment, and (3) physicians did not indicate medication would preclude him from working.").

Although Plaintiff made some consistent claims at various times, she also made other, inconsistent claims at various times. Moreover, the ALJ was also required to also consider her course of treatment, objective evidence, and activities of daily living in evaluating her credibility. A reasonable mind could accept Plaintiff's noncompliance with treatment, Dr. Goodman's opinion, and daily activities to conclude that her claims were not fully credible. Substantial evidence supports the ALJ's credibility assessment.

## VII.    Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. *Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.

Dated: March 31, 2015                              _____
                                                                        *s/Gerald B. Cohn*

GERALD B. COHN
UNITED STATES MAGISTRATE JUDGE